DISTRICT OF OREGON

**F I L E D**

**July 07, 2025**

**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_Teresa H. Pearson_
_____
TERESA H. PEARSON
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 24-32731-thp13 |
| Eugene Ezra Perkins, | MEMORANDUM DECISION[1] |
| Debtor. | |

      This matter came before the court on July 2, 2025, on the court's Order to Show Cause Re: Dismissal, Conversion, or Other Relief.[2]  Debtor Eugene Ezra Perkins represented himself. Jonathan C. Kuni appeared on behalf of chapter 13 trustee Wayne Godare.  Christian Torimino appeared on behalf of the United States Trustee.

      Based on the arguments of debtor and counsel, and the records and files of this case, the court holds that this case should be dismissed.

### **Relevant Facts**

1.      Debtor filed this voluntary chapter 13 case on October 2, 2024.[3]

---

[1] This disposition is specific to this case.  It may be cited for whatever persuasive value it may have.
[2] ECF No. 120, filed June 9, 2025.
[3] ECF No. 1, filed October 2, 2024.

2.        Debtor filed his initial chapter 13 plan dated October 23, 2025.[4]  This plan required debtor to make monthly payments of $365.44 (although the plan was somewhat ambiguous, as there are components of the payment described for the vehicle, unsecured debt, and trustee fees listed which totaled $365.94 per month, a fifty-cent difference).

3.        Pursuant to 11 U.S.C. section 1326(a)(1), the debtor's first payment to the chapter 13 trustee was due within in 30 days of the plan filing, or the order for relief, whichever is earlier.  That deadline was November 1, 2025.

4.        The chapter 13 trustee assigned to this case routinely provides a booklet to all debtors in his chapter 13 cases explaining that they are required to make plan payments and providing instructions on how to make payments.

5.        On or about October 29, 2024, debtor attempted to file a first amended chapter 13 plan dated October 28, 2025, which the clerk's office returned[5] because the amended plan was filed too close to the confirmation hearing date and was not accompanied by the notice of amended plan required by local rules.  This plan included the same payment monthly requirement of $365.44 per month (with the same description of the components of payment that totaled $365.94 per month).

6.        On November 1, 2024, debtor filed a motion to waive the requirements to provide notice of the plan under the local rules.[6]   The court denied this motion on the same day in a text only order,[7] which provided that "[t]he preliminary, non-evidentiary hearing on confirmation of the debtor's plan will proceed on November 25th as scheduled.  If the Debtor still wishes to file a modified plan at the time of the confirmation hearing, he may request denial of confirmation with leave to file an amended plan at that time."

---

[4] ECF No. 25, filed October 23, 2024.
[5] ECF No. 34, entered October 29, 2024.
[6] ECF No. 41, filed November 1, 2024.
[7] ECF No. 44, entered November 1, 2024.

7.      On or about November 1, 2024, debtor attempted to file a second amended chapter 13 plan dated November 1, 2025.  The clerk's office returned this plan[8] because it was not accompanied by the notice of amended plan required by local rules, pointing out that the court denied debtor's request to waive the notice requirement.

8.      On November 25, 2024, the court held a confirmation hearing and orally denied confirmation of the debtor's initial chapter 13 plan because the debtor wanted to file an amended plan.[9]  Neither the chapter 13 trustee nor the debtor informed the court that the debtor had not yet made any plan payments to the chapter 13 trustee.

9.      On November 26, 2024, the court entered its written order denying confirmation of the debtor's plan.[10]  The order gave debtor 14 days to file an amended plan, or the case would be dismissed.

10.     On or about December 4, 2024, debtor attempted to file a plan denominated the "third amended" plan dated December 4, 2024.  The clerk's office returned this plan because it was filed too close to the confirmation hearing and was not accompanied by the notice of amended plan required by local rules.[11]  This plan provided for a monthly payment of $482.

11.     On December 10, 2024, debtor filed a first amended plan dated December 11, 2024.[12]  This first amended plan was accompanied by the required local form notice of amended plan.  This first amended plan provided for payments of $510 per month.

12.     On January 23, 2025, the court held a hearing and orally denied confirmation of the first amended plan dated December 11, 2024, because debtor wanted to file another amended plan.[13]  Debtor asserted that there was some confusion about plan payments.  Counsel for the chapter 13 trustee commented that he had seen a further draft plan amendment from debtor that

---

[8] ECF No. 46, entered November 1, 2024.
[9] ECF No. 59, filed November 25, 2024.
[10] ECF No. 60, entered November 26, 2024.
[11] ECF No. 68, entered December 4, 2024.
[12] ECF No. 76, filed December 10, 2024.
[13] ECF No. 91, filed January 23, 2025.

provided for no payments for two months, which he thought would be appropriate given the debtor's circumstances. However, neither the chapter 13 trustee nor the debtor informed the court that the debtor as of that time had made no plan payments to the chapter 13 trustee. The court did not comment on any terms of the potential new draft plan, as it was not before the court.

13.     On January 24, 2025, the court entered its written order denying confirmation of the debtor's first amended plan dated December 11, 2024.[14] This order gave debtor 14 days to file an amended plan, or the case would be dismissed.

14.     Debtor did not timely file an amended plan. The case was dismissed on February 14, 2025.[15]

15.     On February 20, 2025, debtor filed a motion to reopen the case.[16] Among other things, debtor represented to the court in the motion that "[a]t no point in this case has Debtor missed a deadline that would have warranted dismissal."

16.     On February 21, 2025, debtor filed an amended motion to reopen the case.[17] Among other things, debtor represented to the court in the amended motion that "[a]t no point did Debtor fail to meet a deadline or intentionally delay proceedings."

17.     On or about February 27, 2025, debtor attempted to file a second amended plan dated January 22, 2025.[18] This plan proposed that debtor would make monthly payments of $0 for the first two months, then $532 thereafter. The clerk's office returned this plan because the chapter 13 case had been dismissed and was still closed at that time.[19]

---

[14] ECF No. 92, entered January 24, 2025.
[15] ECF No. 95, entered February 14, 2025.
[16] ECF No. 97, filed February 20, 2025.
[17] ECF No. 98, filed February 21, 2025.
[18] ECF No. 102, entered February 27, 2025.
[19] *Id.*

18.     On March 13, 2025, the court held a hearing on the debtor's motion to reopen the case and granted the motion.[20]  The court issued a minute order requiring debtor to file an amended plan no later than March 20, 2025.

19.     On March 14, 2025, the court entered its written order setting aside dismissal and reopening the case.[21]

20.     On March 19, 2025, debtor attempted to file his second amended plan dated March 19, 2025.[22]  This plan proposed paying monthly payments of $0 for the first four months, and then $569 per month thereafter.  The debtor sent multiple versions of this document to the clerk's office, and the clerk's office initially only docketed one of them.[23]

21.     On March 20, 2025, the clerk's office returned the plan that was docketed, because the plan did not include a current version of the notice of amended plan required by local rules and the certificate of service portion of the form was not filled out to show service on all required parties.[24]

22.     On April 24, 2025, the debtor appeared at the proposed confirmation hearing date for the second amended plan dated March 19, 2025 (although at that time, there was no plan on file to be considered).[25]  The court advised debtor that he did not have a plan on file, since the one he attempted to file was returned by the clerk's office.  The court noted that it did not appear that debtor had served this second amended plan on all his creditors.  The debtor believed he had filed this second amended plan, describing how he tried to file it.  However, it was clear that debtor had not served this second amended plan on all his creditors.  The court instructed debtor to file an amended plan, obtain a court date from the courtroom deputy, file the correct notice of

---

[20] ECF No. 104, entered March 14, 2025.
[21] ECF No. 106, entered March 14, 2025.
[22] ECF No. 109, filed March 19, 2025.
[23] On April 24, 2025, the clerk docketed another version of the debtor's second amended plan dated March 19, 2025.  ECF No. 112, filed March 19, 2025 (this docket entry was amended on April 24, 2025).
[24] ECF No. 110, entered March 20, 2025.
[25] ECF No. 113, filed April 24, 2025.

that amended plan, serve that amended plan on all his creditors, including his unsecured creditors, and file a correct certificate of service indicating service was made.  The court required debtor to file and serve this new amended plan using the correct local form of notice no later than May 8, 2025.  At this hearing neither the chapter 13 trustee nor the debtor informed the court that the debtor still had made no plan payments to the chapter 13 trustee.

23.     On May 6, 2025, the debtor filed his second amended plan dated May 6, 2025.[26] This plan proposed monthly payments of $0 for eight months, $582 for one month, and then $610 thereafter.

24.     On June 5, 2025, the court held a hearing on confirmation of this second amended plan.[27]  There were no objections to this second amended plan and the chapter 13 trustee submitted a proposed order confirming this second amended plan before the hearing.  However, the court did not sign the proposed order and held the hearing because the court was concerned about lack of service of this second amended plan on creditors.  Specifically, there was no evidence in the record that the debtor had ever served this second amended plan on all his creditors.  In fact, debtor had not served the second amended plan on all his creditors, and did not serve many of the creditors who had filed proofs of claim.  The court was also concerned about whether the Bankruptcy Code provided authority for confirmation of a plan that did not require payments for the first eight months of the case.

25.     At the hearing, the chapter 13 trustee disclosed that debtor made his first plan payment to the chapter 13 for $580 on May 1, 2025, and debtor made his second payment of $612 on June 3, 2025.  This was the first time the court was informed that no payments were made to the chapter 13 trustee in this case before May 1, 2025.

---

[26] ECF No. 114, filed May 6, 2025.
[27] ECF No. 115, filed June 5, 2025.

26.     On June 6, 2025, the court entered an order denying confirmation of the second amended plan dated May 6, 2025, due to lack of required service and because the second amended plan did not comply with the Bankruptcy Code.

27.     On June 9, 2025, the court issued an order to show cause why the case should not be dismissed or converted to chapter 7, based on debtor's failure to comply with 11 U.S.C. section 1326(a)(1).[28]

28.     On June 9, 2025, the debtor filed a written response to the order to show cause[29] citing certain case authority (described below), and a certificate of service for the response.[30]

29.     On June 11, 2025, the debtor uploaded a proposed order discharging the order to show cause.[31]  Later that same day, the court struck the proposed order as prematurely lodged, and because it did not comply with the local rules for formatting of orders.[32]

30.     On June 17, 2025, the debtor filed a second written response to the order to show cause.[33]  This document was not an exact duplicate of debtor's first response to the order to show cause, but made similar points and cited similar authorities.  Debtor asserted in this response that he "now intends to further revise the plan to expressly reflect statutory compliance and eliminate any appearance of default at the outset of the plan period."[34]  Debtor said in the response that he "has prepared an updated creditor matrix and included those claimants in the Certificate of Service attached to this Response," but the response has no certificate of service or list of creditors served.  No additional certificate of service has been filed.

31.     At the hearing on the order to show cause, debtor indicated that the second written response to the order to show cause was an unintended duplicate and should be disregarded.

---

[28] ECF No. 120, entered June 9, 2025.
[29] ECF No. 121, Filed June 9, 2025.
[30] ECF No. 122, filed June 9, 2025.
[31] ECF No. 123, filed June 11, 2025.
[32] ECF No. 124, entered June 11, 2025.
[33] ECF No. 131, filed June 17, 2025.
[34] It is unclear to this court how debtor could revise history to reflect that he made payments he did not make.

32.    This is debtor's fifth bankruptcy case.  He previously filed the following four cases:

| Date | Case Number | Chapter | Bankruptcy Court Venue | Outcome |
|---|---|---|---|---|
| 03/17/1995 | 95-31202 | 7 | W.D. Wash. | Standard Discharge 06/27/1995 |
| 06/16/2003 | 03-36774 | 7 | D. Oregon | Standard Discharge 09/25/2003 |
| 06/29/2011 | 11-35656 | 7 | D. Oregon | Standard Discharge 10/05/2011 |
| 05/17/2024 | 24-31383 | 7 | D. Oregon | Standard Discharge 09/20/2024 |

## Analysis

The Bankruptcy Code requires that debtors commence making payments "not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—(A) proposed by the plan to the trustee . . ."[35]  Debtor was required to make a payment of $365.44 to the chapter 13 trustee no later than November 1, 2024.  There is no dispute that debtor did not meet that requirement.  Debtor did not make any payment to the chapter 13 trustee until May 1, 2025—six months after his first payment was due.  A court may dismiss or convert a chapter 13 case if debtor fails to commence making timely payments to the chapter 13 trustee.[36]

Debtor makes several arguments why the case should not be converted or dismissed.  First, debtor asserts he is *pro se*, did not understand that he needed to make payment to the trustee, he believed he could fix the problem with an amended plan, and he thought the trustee would approve an amended plan with no payment requirement for several months.  While the court doubts that debtor was unaware of the requirement to make payments, debtor's beliefs are not relevant.  The Bankruptcy Code clearly requires commencement of payment within 30 days and debtors are required to comply with the Bankruptcy Code.

---

[35] 11 U.S.C. § 1326(a)(1).
[36] 11 U.S.C. § 1307(c)(4); *Gilbert v. Danielson (In re Gilbert)*, 671 Fed. Appx. 697 (9th Cir. 2016).

Debtor also cites case law that he claims supports his position that this case should not be converted or dismissed.  This case law does not support debtor's position, nor are debtor's descriptions of these cases accurate.

First, debtor cites *Walters*.[37]  Debtor describes the holding of *Walters* as: "The court allowed the debtor to amend the Chapter 13 plan to include catch-up payments rather than dismissing the case."[38]  In fact, the court made no such holding.  The court actually held that a debtor could not file an initial plan requiring one monthly payment amount, then file an amended plan with a different monthly payment, and have the amended plan retroactively change what was required by the initial plan.[39]  The court said in a footnote that: "The Court can think of no reason why an amended plan could not provide for the make-up of delinquent payments or why an amended plan could not specifically provide that pre-amendment arrearages be caught up through some other means.  The Court also believes the debtor could have filed a motion to suspend the pre-amendment payments.  However, since these issues are not presently before the Court, it declines to decide them."  Moreover, *Walters* was decided before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) amended the language of section 1326(a)(1).  Comments in *Walters* about the prior version of section 1326(a)(1) are not relevant to the current language in section 1326(a)(1).

Next, debtor cites *Cobb*.[40]  *Cobb* was also decided before BAPCPA amended the language in section 1326(a)(1).  Before BAPCPA, section 1326(a)(1) required debtors to start making payments within 30 days after the plan is filed, and the time for filing the plan could be extended.  After BAPCPA, section 1326(a)(1) requires debtors to make payments "not later than

---

[37] *In re Walters*, 223 B.R. 710 (Bankr. W.D. Mo. 1998).

[38] Debtor's Response to Order to Show Cause for Conversion or Dismissal, ECF No. 121, filed June 9, 2025, p. 2.

[39] *Walters*, 223 B.R. at 713.  Under *Walters*, if it applied, debtor would have been required to make his initial monthly payment of $365.44 (or $365.94) by November 1, 2024.  *Walters* does not support debtor making no payments for six months, or retroactively changing his payments amount to $0.

[40] *Cobb v. Mortgage Default Services (In re Cobb)*, 122 B.R. 22 (Bankr. E.D. Pa. 1990).

30 days after the date of the filing of the plan or the order for relief, whichever is earlier." In *Cobb*, the debtor delayed filing her initial chapter 13 plan for over seven months, and payments were not due until she filed her plan. The court held that it would give the debtor a chance to propose a feasible plan.[41]  *Cobb* is factually distinguishable and is not persuasive. Here, debtor filed plans, but did not make any payments to the chapter 13 trustee until six months after his case was filed.

Finally, debtor cites *In re Vega-Lara*, No. 18-50326-CAG, 2018 WL 2422427 (Bankr. W.D. Tex. 2018). Debtor describes the holding of *Vega-Lara* as: "**Issue**: The pro se debtor failed to initiate payments within the required timeframe. **Holding:** The court allowed the debtor to cure the payment delay by submitting a modified plan."[42]

This citation is not accurate, nor is the description of the case and holding. The case number does not match to the Westlaw citation. Using the Westlaw citation, the court is led to *In re Vega-Lara*, No. 17-52553-CAG, 2018 WL 2422427 (Bankr. W.D. Tex. May 4, 2018), *aff'd*, No. 5:18-CV-00796-RCL, 2019 WL 4545613 (W.D. Tex. Sept. 19, 2019), *vacated and remanded sub nom. Matter of Diaz*, 972 F.3d 713 (5th Cir. 2020). This case decided whether a debtor had to turn over tax refunds or if debtor could pro-rate them on Schedule I, and whether a plan form required by local rule could be modified.[43] Although the case name matches what debtor cited, this case did not involve a *pro se* debtor, has been vacated (which debtor did not disclose), and the issues decided are not even remotely the same as the issues in this case. Using the case docket number, the court is led *In re Stewart,* case no. 18-50326 (Bankr. W. D. Tex. 2018). *Stewart* was a simple no asset chapter 7 case with no written opinions. As far as this court can find, there is no case called *In re Vega-Lara* that says anything like what the debtor claims it says.

---

[41] *Cobb*, 122 B.R. at 27-28.
[42] Debtor's Response to Order to Show Cause for Conversion or Dismissal, ECF No. 121, filed June 9, 2025, p. 2.
[43] *Vega-Lara*, 2018 WL 2422427, *5-8.

Because there is cause to convert or dismiss this case, this court next must decide between those options.[44]  In making that decision, the court must consider what is in the best interest of creditors and the estate, and not what is in the best interests of the debtor.[45]  At the hearing on the order to show cause, neither the chapter 13 trustee nor the U.S. Trustee expressed a preference between conversion or dismissal.

Based on the court's review of debtor's schedules,[46] it does not appear likely that there are assets in this case for a chapter 7 trustee to administer.  The debtor is ineligible to receive a discharge in this case.[47]  The court sees no benefit to creditors and the estate of conversion of this case.  Therefore, the court will dismiss this case.

At the hearing on the order to show cause, the court asked the debtor how he did the research to obtain the cases he cited in his response to the order to show cause.  Debtor admitted that he used artificial intelligence on his computer.  This use of artificial intelligence provided results to debtor that were inaccurate, irrelevant, and useless.

When an attorney or unrepresented party presents information to a court, that person certifies to the court that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,— . . . the legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.[48]

Debtor's citation of case authority provided by artificial intelligence, without determining that the case authority actually says what the artificial intelligence claimed it says, did not meet this standard for a reasonable inquiry.  If an attorney or party wishes to cite authority provided by artificial intelligence, this court expects the attorney or party submitting a document containing that authority to review that authority personally.  The attorney or party must independently

---

[44] *Jiminez v. ARCP 1, LLC (In re Jimenez)*, 613 B.R. 537, 543 (9th Cir. BAP 2020).
[45] *Brown v. Sobczak (In re Sobczak)*, 369 B.R. 512, 519 (9th Cir. BAP 2007).
[46] ECF No. 23, filed October 23, 2024.
[47] *See* ECF No. 8, filed October 3, 2024.  Debtor filed no objection to this notice.
[48] Fed. R. Bankr. P. 9011(b)(2).

verify that the information about that authority to be provided to the court is correct before submitting the document to the court.  Failure to do so does not comply with Rule 9011.

Although this court could consider imposing sanctions against debtor under Rule 9011(c) in this case, the court sees no need to do so given that this case will be dismissed.

# # #